H28AMELHps

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  UNITED STATES OF AMERICA,

4                v.                        16-MISC-461 (PAE)

5  JAMES ROSS MELLON II and
   VIVIAN RUESCH,
6
                Defendants.
7
   ------------------------------x
8
                                      New York, N.Y.
9                                     February 8, 2017
                                      12:00 p.m.
10

11 Before:

12                HON. PAUL A. ENGELMAYER

13                                      District Judge

14
                        APPEARANCES
15
   PREET BHARARA
16      United States Attorney for the
        Southern District of New York
17 BY:  JACOB T. LILLYWHITE,
        LARRY FOGELMAN, ESQ.
18      Assistant United States Attorneys

19 FRANK AGOSTINO, ESQ.
   JAIRO CANO, ESQ.
20      Attorneys for Defendants

21
   Also Present:  Rachel Samuels
22                 Intern, U.S. Attorney's Office

23

24

25

                SOUTHERN DISTRICT REPORTERS, P.C.
                      (212) 805-0300

H28AMELHps

```
 1              (In open court)
 2              THE CLERK:  In the matter of United States v. Mellon
 3    II, et al., 16 Misc. 461, counsel please state your appearance
 4    for the record.
 5              MR. LILLYWHITE:  Jacob Lillywhite on behalf of the
 6    United States.
 7              MR. FOGELMAN:  Good morning.  Larry Fogelman, also on
 8    behalf of the United States.
 9              THE COURT:  Also good morning to you.
10              MS. SAMUELS:  Rachel Samuels, intern.
11              THE COURT:  Good morning to you as well.
12              MR. AGOSTINO:  Good morning, your Honor.  Frank
13    Agostino for the Mellons.
14              THE COURT:  For Mr. Mellon as well as Ms. Ruesch?
15              MR. AGOSTINO:  Ruesch, yes.
16              THE COURT:  And you are joined by?
17              MR. CANO:  Jairo Cano.  I'm with Agostino &
18    Associates, also for Mr. Mellon and Mrs. Ruesch.  I do want to
19    note, I don't have a formal entry of appearance in the record.
20              THE COURT:  That's noted.  OK.
21              Welcome to all of you.  You may be seated.
22              Counsel, I have read everyone's very thoughtful and
23    helpful submissions.  I have a discrete question or two for
24    you, but I'm basically prepared to rule.  So I don't invite
25    argument unless there is something that somebody wants to add.
```

H28AMELHps

1          Let me begin with the government table.  Was there

2     anything at the government table that you want to put on the

3     record?

4          MR. LILLYWHITE:  Not unless your Honor has any

5     questions.

6          THE COURT:  I have a question or two, but independent

7     of that, is there anything you want to raise?

8          MR. LILLYWHITE:  No, your Honor.

9          THE COURT:  Mr. Agostino, anything from you?

10         MR. AGOSTINO:  Yes.  In our papers, I confused

11    "subject matter jurisdiction" and "personal jurisdiction" in

12    those captions.  So with respect to 7604, it is our argument

13    that that's subject matter jurisdiction, as opposed to personal

14    jurisdiction.

15         THE COURT:  No offense or contention taken.

16         MR. AGOSTINO:  Then, with respect to subject matter

17    jurisdiction, our argument was that residence and then

18    residence, if there is non-residency, goes to 7701, which is

19    then district upcoming.  Then personal jurisdiction is 7603,

20    right.  And that's the service of issue once the Court has

21    subject matter jurisdiction.  Right.  My moving papers

22    conflated the two.

23         THE COURT:  No harm.  But thank you.  I appreciate the

24    clarification.

25         MR. AGOSTINO:  So those are our arguments.

H28AMELHps

1          On Mr. Mellon, the argument is simply that the Court

2     lacks subject matter jurisdiction, it lacks personal

3     jurisdiction, and that just as a practical matter, having

4     someone travel from Switzerland to New York to answer when

5     there is the procedure of serving the consulate and having him

6     report in Switzerland to be questioned is the more appropriate

7     way.

8          For Ms. Ruesch, there is, again, two pieces.  One, on

9     the document part of the statute, we think we comply.  We

10    brought to the Court the documents that -- we provided, we

11    redacted the bank statements and financial statements to take

12    out the notes that she gave us to decide which columns they go

13    into on their response.  So we Bates-stamped all the response.

14    We brought into court and we have for in camera submission the

15    bank statement with her handwritten notations.

16         THE COURT:  That's not necessary.  Let me just focus

17    on the documents.  Government, just briefly, can you rattle off

18    the species of documents which are called for which have not

19    been, in your view, produced.

20         MR. LILLYWHITE:  Yes, your Honor.  So I believe there

21    are two broad categories.  One, as to all of the document

22    requests, there seems to be a distinction that Ms. Ruesch is

23    drawing between documents in her possession and documents in

24    her custody and control.  And she has stated that she has

25    produced for all document requests, I believe, except for 5 and

H28AMELHps

7, the documents in her possession, but argues that it would be

inappropriate to require that she produce documents in her

custody or control, although she admits that under the IRS

summons power, the IRS is certainly entitled to get those

documents, but she thinks that there's a broad privilege issue

there.

                THE COURT:  Right.

                MR. LILLYWHITE:  And then there are specific issues

that she raises as to document requests 5 and 7.

                THE COURT:  Right.  In sort of a more concrete way,

what species of document do you have reason to believe that she

has possession, custody, or control over that has not been

produced?

                MR. LILLYWHITE:  For example, your Honor, there may

well be documents, whether formation documents or other

documents associated with foreign entities that the IRS has

reason to believe she was associated with, that she has not

produced.  There may certainly be additional account statements

that she doesn't presently have in her possession or didn't

have at the time she produced that she has in her custody or

control.  And there may well be other sorts of records,

including travel records, that, although she doesn't have in

her possession, she has custody of.

                THE COURT:  I suppose after she is questioned under

oath, you may have a more sharp understanding of what there is

H28AMELHps

```
 1    out there that is within her possession custody or control.
 2              MR. LILLYWHITE:  I understand.
 3              THE COURT:  Mr. Agostino, is there anything further
 4    that you want to add?  I've read your papers, so no need to
 5    retread the ground that's covered, and you covered it well.  I
 6    just want to understand if there's anything more.
 7              MR. AGOSTINO:  She said she's got everything in her
 8    possession, custody, or control turned over, that she doesn't
 9    have to ask her husband what he has that may be responsive to
10    her summons.  She has affirmatively said --
11              THE COURT:  Are they married?
12              MR. AGOSTINO:  They are still married.  They don't
13    live together, but they are still married.
14              THE COURT:  Do they ever have contact with one
15    another?
16              MR. AGOSTINO:  Yes, they do.
17              THE COURT:  Are they approaching separation or
18    divorce?
19              MR. AGOSTINO:  They live interesting separate lives.
20    I don't think that we would call it separation or divorce.  I
21    think it's something --
22              THE COURT:  They just don't spend all their time
23    together.
24              MR. AGOSTINO:  Yes.
25              THE COURT:  All right.  Look, Ms. Ruesch, anything --
```

H28AMELHps

1   excuse me.  Mr. Agostino, anything further about Ms. Ruesch?

2             MR. AGOSTINO:  No, your Honor, other than the in

3   camera review.

4             THE COURT:  Right.  I don't think that is necessary.

5             May I ask you, just, Mr. Ruesch -- I'm sorry.  I

6   keep -- I've written down "Ruesch" because I was going to

7   pronounce Ms. Ruesch's name differently, as "rush."  Forgive

8   me.

9             Mr. Agostino, is it really the case that your clients

10  haven't paid federal taxes in a long time?  When did they last

11  pay them?

12            MR. AGOSTINO:  We need to separate Mr. Mellon and

13  Mrs. Ruesch, your Honor.  Mr. Mellon renounced his citizenship

14  in 1977.  He is neither a citizen nor resident of the United

15  States.  It is our position that he is not subject to United

16  States taxation.  He does not spend --

17            THE COURT:  Because of his lack of citizenship?

18            MR. AGOSTINO:  He's not a citizen.  He is not a

19  resident.  He's not a domiciliary.  United States citizenship

20  can be renounced.  The United States can't tax everyone in the

21  world.  There needs to be domicile or citizenship.  If you read

22  down FACTA, there are 3,000 United States persons that have

23  either renounced their citizenship or given up their Green

24  Cards.

25            THE COURT:  For somebody in that situation, what, as

H28AMELHps

1    you understand it, is the dispositive factual degree as to

2    whether or not they are obliged to pay income taxes?

3    Renunciation of citizenship isn't an automatic shield against a

4    tax obligation.  There is a factual inquiry.  What is it in

5    your view?

6            MR. AGOSTINO:  Is there income that is effective -- I

7    would defer to the United States, obviously.  But they would

8    need to demonstrate there was income that was effectively

9    connected to the United States, that there's a United States

10    business, there's a United States entity that was operating

11    that generates income that should be taxed by the United

12    States, whereas --

13            THE COURT:  And Mr. Lillywhite, what in your view, if

14    it's not disputed that Mr. Ruesch is a noncitizen --

15            MR. LILLYWHITE:  Mr. Mellon.

16            THE COURT:  Excuse me, I'm sorry.  Mr. Mellon is a

17    noncitizen.  What in your view is the operative test that will

18    determine whether or not he has tax obligations?

19            MR. LILLYWHITE:  Your Honor, under 26 U.S.C. § 7701

20    there is a substantial presence test, and if someone meets the

21    substantial presence test by spending a sufficient amount of

22    time in the United States, and I believe it looks to a tax year

23    and they also look to a year prior and the year forward, then

24    they are qualified as a resident alien for purposes of the tax

25    code.

H28AMELHps

1          THE COURT:  And so part of the factual inquiry that

2     you are proposing to undertake, both in testimony and of a

3     documentary nature, is to test both the proposition that he is

4     within the scope of the tax laws, applying that standard, as

5     well as, if he is, what the tax math is.

6          MR. LILLYWHITE:  That's right, your Honor.

7          THE COURT:  OK.  And, Mr. Agostino, you were going to

8     give me a different inquiry for Ms. Ruesch.

9          MR. AGOSTINO:  Well, Ms. Ruesch has filed her tax

10    returns.  Again, husband and wife file separately, right.  They

11    file separate returns.  Ms. Ruesch does spend enough time in

12    the United States to be required to file a return.  So the

13    Internal Revenue Service made the determination.  They prepared

14    substitutes for return.  We reviewed the substitutes for

15    return, filed the returns, paid the tax, and had that

16    examination.  So we believe, with respect to Ms. Ruesch, she

17    has complied.  There was an examination.

18          THE COURT:  I see.

19          MR. AGOSTINO:  As they admit, the only reason they're

20    really looking at Ms. Ruesch now is because she's married to

21    Mr. Mellon and travels with him and suggests that there may be

22    unreported income.  And that's what we argued.  That's exactly

23    what Congress prohibited them from doing in 7602(e).  You don't

24    begin examinations and investigations of people just based on

25    financial status or, what they say, economic reality.  The mere

H28AMELHps

```
1   fact that someone is married to someone that's wealthy does not
2   mean that they in essence themselves have income, right.
3   Husbands have duties to support wives.
4           THE COURT:  All right.  Thank you.
5           Government, final question before I rule:  You at some
6   point in your papers indicated a desire to seek attorney's
7   fees.  But you are civil servants who don't bill by the hour.
8   Are you pursuing attorney's fees?
9           MR. LILLYWHITE:  Your Honor, I believe there are
10  questions of costs, and in this case, given the costs that have
11  been expended, we're not seeking that at this time.
12          THE COURT:  So you are renouncing the claim to fees
13  and costs.
14          MR. LILLYWHITE:  Yes, your Honor.
15          THE COURT:  All right.  I'm going to need to rule, but
16  I have a ruling that I will read from.
17          All right.  Good afternoon.  This morning, the Court,
18  sitting in part I, heard brief discussion from counsel and
19  brief argument regarding the order to show cause issued by
20  Judge Failla herself sitting in part I on December 21, 2016,
21  which in turn arose out of the government's petition to compel
22  respondents to respond to an IRS summons.  The Court is now
23  going to rule on the petition.  For your planning purposes,
24  there will not be a written decision.  I will issue a
25  bottom-line order reflecting my disposition of the motion.  To
```

H28AMELHps

1    the extent the Court's reasoning is significant to counsel, it

2    will be reflected on the transcript of this conference.  And

3    not to be a plot spoiler, but, government, I will be seeking

4    from you, please, a proposed order that is sufficient to

5    capture the decision I am about to render, just to make sure

6    that I'm formulating the order in a way that is technically

7    responsive to the needs of the case and the ruling that I'm

8    about to make.

9          So I'm going to begin by briefly summarizing the

10   relevant facts and procedural background.

11         The case arises out of a dispute between the United

12   States government and respondents regarding a set of summons

13   issues to respondents by the IRS as part of the IRS's

14   investigation into their tax liability between the years 2005

15   and 2011.

16         On December 12, 2016, the government filed this

17   miscellaneous action in the Southern District of New York

18   against respondents James Ross Mellon II, an heir to the Mellon

19   fortune, and his wife, Vivian Ruesch, to enforce summonses

20   issued to Mellon and Ruesch by the IRS.  That's Docket 1.  In

21   support, the government filed a memorandum of law, Docket 2,

22   and a declaration by IRS Agent Gary Frangipane, Docket 3.  On

23   December 21, 2016, Judge Failla issued an order to show cause,

24   Docket 5, directing the respondents to show cause why they had

25   failed to properly respond to the summonses.  On January 13,

H28AMELHps

1    Mellon filed a motion to dismiss this action for lack of

2    jurisdiction -- that's Docket 8 -- as well as supporting

3    memoranda of law for each respondent, which are Dockets 9 and

4    12, in addition declarations by Mr. Mellon's attorney, Frank

5    Agostino, at Docket 10 and by Ms. Ruesch at Docket 11.  On

6    February 3, 2017, the government filed reply briefs -- that's

7    Dockets 15 and 18 -- and supportive declarations -- that's

8    Dockets 16 and 17.  On February 6, 2017, Mellon filed a reply

9    memorandum.  That's Docket 19.

10         The government asks the Court here to direct the

11   respondents to comply fully with the summonses issued to Mellon

12   on March 10, 2016 and to Ruesch on December 5, 2016.  According

13   to the government, it and this Court have jurisdiction over the

14   IRS's investigation of respondents' alleged tax liabilities,

15   and therefore also to enforce the IRS summons against

16   respondents.  The government further argues that respondents

17   have not given any valid justifications for failing to respond

18   fully to the summons and thus intervention by this Court is

19   necessary.

20         Respondents counter that the government's petition

21   should be dismissed by the Court, for lack of jurisdiction

22   among other reasons.

23         In the course of the colloquy today, counsel for

24   respondents also suggested that there simply may be no taxes

25   due and owing.  But that's ultimately a merits issue that would

H28AMELHps

1   be reached if at all following the completion of the

2   fact-gathering process by the IRS.

3          Turning to the discussion, the issue before the Court

4   today is whether respondents must comply with the IRS

5   summonses.  The short answer, the clear and obvious answer, is,

6   yes, respondents must do so.  There is no justification, none,

7   zero, for respondents to flout the summonses.  The Court today

8   will issue a separate emphatic order to that effect.

9          The Court will now address the respondents' various

10  objections, starting with Mellon's and then turning to

11  Ruesch's, and explain why they lack merit.

12         First, Mellon argues that this Court lacks subject

13  matter jurisdiction over his tax controversy with the IRS.

14  That is wrong.  Section 1340 of Title 28 gives federal district

15  courts jurisdiction over "any civil action arising under any

16  act of Congress providing for internal revenue."  That section

17  has been held to apply to IRS summons enforcement actions, as

18  explained, for example, in two federal appellate decisions:

19  *United States v. B&D Vending, Inc.*, 398 F.3d 728, 731 (6th Cir.

20  2004), and *United States v. Saunders*, 951 F.2d 1065, 1068 (9th

21  Cir. 1991).  Separately, Section 1345 of Title 28 grants

22  district courts subject matter jurisdiction over "all civil

23  actions, suits or proceedings commenced by the United States,"

24  which of course includes IRS summons enforcement suits.

25  Therefore, this Court has subject matter jurisdiction over this

H28AMELHps

1    action.

2         Second, Mellon argues that this Court lacks personal

3    jurisdiction over him.  Here, too, he is incorrect.  In the

4    *Licci ex rel. Licci v. Canadian Bank, SAL*, 673 F.3d 50, 59-60

5    (2d Cir. 2012), the Second Circuit held that a court may

6    exercise personal jurisdiction over a defendant after service

7    of process on that defendant when (1) there exists "a statutory

8    basis for personal jurisdiction" and (2) the exercise of

9    personal jurisdiction would "comport with constitutional due

10   process principles."

11        In this case, as to the first element, there are

12   statutory bases for personal jurisdiction over Mellon under

13   Section 7402 and 7604 of the Internal Revenue Code.  These

14   provide that "by appropriate process," the district court in

15   which the summonsed person "resides or may be found" shall gain

16   both subject matter and personal jurisdiction over an IRS

17   enforcement action.  See 26 U.S.C. §§ 7402(b) and 7604(a).  And

18   given the substantial evidence that Mr. Mellon resides at least

19   part time at his Fifth Avenue apartment, the Court finds that

20   Mr. Mellon "may be found" in the Southern District of New York.

21   See *United States v. Toyota Motor Corp.*, 561 F. Supp. 354, 357

22   (C.D. California 1983).  Therefore, the first element under

23   *Licci* is met.

24        The second element is also met.  In *Kadic v. Karadzic*,

25   70 F.3d 232, 247 (2d Cir. 1995), the Second Circuit held that

H28AMELHps

with respect to a natural person, "personal service [pursuant
to Fed R. Civil P. 4(e)(2)] comports with the requirements of
due process for the assertion of personal jurisdiction."  And
Mellon was properly served under Rule 4(e) with the order to
show cause and the petition to enforce the IRS summons.
Service was with the doorman of Mellon's Fifth Avenue apartment
building.  That service complied with Rule 4(e).  To comply
with the rule, a process server must "leav[e]...with someone of
a suitable age and discretion who resides there," "a copy of
[the papers] at the individual's dwelling or usual place of
abode."  Citing Rule 4(e)(2)(B).  Courts in this district have
repeatedly held that service on doormen or building managers
satisfies Rule 4(e).  *See*, *e.g.*, *Rana v. Islam*, 305 F.R.D. 53,
63 (S.D.N.Y. 2051); *Howard Johnson International, Inc. v. Wang*,
7 F. Supp. 2d 336, 304 (S.D.N.Y. 1998) (Chin, J.), *affirmed*,
181 F.3d 82 (2d Cir. 1999); *131 Main street v. Manko*, 897 F.
Supp. 1507, 1525 (S.D.N.Y. 1995); and *Three Crown Ltd.
Partnership v. Caxton Corp.*, 817 F. Supp. 1033, 1051 (S.D.N.Y.
1993).  The Court here holds as well, and the Court finds that
the service in this case on Mellon's doorman satisfied
Rule 4(e).

        Now, Mellon claims that the Fifth Avenue apartment was
not his primary or only dwelling.  Even assuming that is so,
that does not change the result.  The Second Circuit's decision
in a closely analogous case, *National Development Company v.*

H28AMELHps

1    *Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991), is

2    persuasive if not controlling as to this claim.  The person

3    served there was "a wealthy man and a frequent intercontinental

4    traveler" who maintained 12 residences around the world.  The

5    Circuit held that service at the man's Fifth Avenue apartment,

6    where he spent only a minority of his time, was effective under

7    Rule 4(e)(2).  As the Circuit explained, "in a highly mobile

8    and affluent society, it is unrealistic to interpret [Rule

9    4]...so that the person to be served has only one dwelling

10    house or usual place of abode at which process may be left,"

11    and "[t]his case presents a perfect example of how ineffectual

12    so wooden a rule would be."  *Id.* at 257.  Mellon, also a

13    part-time Fifth Avenue resident, similarly was not excused from

14    having to comply with the summons by his extreme good fortune

15    to have multiple abodes around the world.  Under the Second

16    Circuit's decision in *PAA Management, Ltd. v. United States*,

17    962 F.2d 212, 216 (2d Cir. 1992), which holds that courts

18    should construe limitations on the government's summons

19    authority "liberally in favor of the IRS," Mellon's claim that

20    his Fifth Avenue apartment was not his "last and usual place of

21    abode" clearly fails.

22           I turn now to Ms. Ruesch's objections.  Her first is

23    that she has in fact "complied with the requests contained in

24    the Summons re: Ruesch, [and thus] an enforcement action

25    against her with respect to the [summons] is unwarranted."

```
 1    That is wrong.  As the government persuasively explains in

 2    documents, the summons required Ruesch to appear in order to

 3    provide testimony at the IRS's office in New York.  She has

 4    failed to do so and does not claim to have done so.  The

 5    subpoena also required her to produce any responsive documents

 6    in her possession, custody, or control.  While she certainly

 7    appears to have produced some documents, the government

 8    persuasively explains why her production appears short of

 9    complete.  Indeed, given the scope of what was actually

10    required by the summons and the comparatively insignificant

11    volume of material that Ms. Ruesch actually turned over to the

12    IRS, it is not credible for her to claim that she has in every

13    particular fully complied with the summons.  I further expect

14    that, following her testimony, more insight will be gleaned

15    into the scope of responsive materials.

16            Ruesch's second objection is that, to the extent she

17    has not complied with the summons, she is protected from doing

18    so by the spousal privilege and by the Fifth Amendment

19    privilege against self-incrimination.  There are compelling

20    reasons on the merits to doubt that either of these privileges

21    would protect Ruesch's as blanket matter from complying.  Each

22    privilege, as the Court is well familiar, applies only under

23    narrow, defined circumstances.  Neither would ordinarily permit

24    a respondent categorically to resist a lawful summons for

25    documents or testimony.  But the Court need not even reach the
```

H28AMELHps

merits question of whether either privilege applies because

Ruesch's invocation of privilege is quite blatantly

procedurally deficient.

          To properly invoke privilege, Ruesch must gather the

responsive documents to the IRS summons, again, both as to

herself and to her husband to the extent called for.  Then, to

the extent she contends that those documents or their

production would be privileged, she must produce a privilege

log that invokes the applicable privilege on a document-by-

document basis.  See *United States v. Gendreau*, No. 12 Misc.

303 (WHP), 2014 WL 464754, at page 3 (S.D.N.Y. January 22,

2014).  As the federal district court in Connecticut stated in

the 2010 case of *United States v. Whitehouse*, No. 10 Civ. 1739,

2010 WL 4876295, at page 3: "[T]o properly invoke the

privilege, the [summoned party] must comply with the summons by

appearing and by asserting the privilege on a document-by-

document basis."  As lawyers and judges appreciate, the purpose

of the requirement of a document-by-document privilege log is

to crystallize the privilege issues.  Such a log assures, for

example, that the foundational elements of the privilege are

met, such as, not exclusively, that the communication in

question was solely among persons to whom a privilege may

attach and did not include third parties whose presence might

destroy the confidentiality premise of the privilege.  Upon

preparation of a log, the party issuing the summons can then

1  object and, if necessary, a reviewing court can resolve,

2  document by document, the validity of the claim of privilege.

3  Thus far, however, Ruesch has not gathered those documents,

4  much less produced a privilege log that properly invokes on a

5  document-by-document basis, the asserted applicable privilege

6  or privileges.

7      Until such time as Ruesch appears and properly invokes

8  a specific privilege in response to a specific question or a

9  specific document request from the government, the Court has no

10  occasion to rule one way or the other on the merits of whether

11  or not a legal privilege might attach to any of the material

12  the government seeks to obtain or any of the questions the

13  government might put to Ms. Ruesch.  There is simply no dispute

14  ripe for adjudication of a privilege claim.  As a sister court

15  in the Eastern District of New York has explained, upon a

16  "blanket invocation of the privilege," and in the absence of a

17  privilege log, a dispute over privilege was "not ripe for

18  determination."  See *Carver v. Nassau County Interim Financial*

19  *Authority*, 2012 WL 12266891, at page 1 (E.D.N.Y. August 9,

20  2012).

21      The Court has considered the remainder of Ms. Ruesch's

22  objections, including her claim that the summons were not

23  issued in good faith, and including her claim that the IRS had

24  actually closed its investigation into her federal tax

25  liability for the period in question.  The Court finds each of

H28AMELHps

```
 1    those arguments substantially, indeed extremely unpersuasive.

 2    The Court summarily rejects them, substantially for the reasons

 3    recited in the government's brief.

 4             The Court therefore will grant and does grant the

 5    government's petition to enforce the summonses against both

 6    Mellon and Ruesch, and directs respondents to comply forthwith

 7    with those summonses.

 8             Government, I will direct you to provide the Court

 9    with a copy of a proposed order consisting with the oral ruling

10    today just to make sure that I have formulated the order in a

11    way that is legally effective.

12             Before we adjourn, is there anything else the parties

13    would like me to address?

14             MR. LILLYWHITE:  No, your Honor.  So we did submit a

15    proposed order about 10:30.  We have a copy here.

16             THE COURT:  Please hand it up.

17             MR. LILLYWHITE:  And I did want to flag for your Honor

18    that we included in that order a requirement that all documents

19    be produced within 30 days.

20             THE COURT:  Let me read this.  And do you have a copy

21    for your adversary, who may have been en route when you sent

22    it?

23             MR. LILLYWHITE:  No, your Honor.  I don't, although I

24    e-mailed him.

25             THE COURT:  All right.  I will hold off for a couple
```

H28AMELHps

1   of hours signing this just to give your adversary an

2   opportunity to review it.  But let me just read it for a

3   moment.

4           (Pause)

5           THE COURT:  The order is completely consistent with my

6   rulings here today.  I intend to sign it.

7           Is there anything further -- you are still rising,

8   Mr. Lillywhite.

9           MR. LILLYWHITE:  No, your Honor.

10          THE COURT:  Mr. Agostino, anything further from you?

11          MR. AGOSTINO:  Your Honor, I wish to file a motion for

12   a stay pending appeal.  Do you want to set a deadline date for

13   that?

14          THE COURT:  The motion for a stay pending appeal is

15   denied.

16          MR. AGOSTINO:  Thank you.

17          THE COURT:  I'm denying it from the bench.

18          MR. AGOSTINO:  Thank you.

19          THE COURT:  So that there will be no stay.  If you

20   want to appeal, go ahead and appeal.  But I'm not staying my

21   ruling.

22          MR. AGOSTINO:  Thank you, your Honor.

23          THE COURT:  And indeed, I will add a sentence to this

24   order that reflects, that reads as follows, in substance: "the

25   Court" --

1                (Pause)

2                THE COURT:  I will amend the order at the very end as

3     follows:  I will put a semicolon after the last word of the

4     order which reads "requests," and I will write, "and it is

5     further ordered that respondents motion –– made orally at the

6     close of today's hearing –– for a stay of the effect of this

7     order is denied."

8                MR. AGOSTINO:  Thank you, your Honor.

9                THE COURT:  Thank you.

10               We stand adjourned.

11               Mr. Agostino, the order that the government has

12    provided to me is utterly consistent with the ruling, A, that

13    it sought, and, B, that I have given.  I will give you till 3

14    o'clock if you want to write a letter to chambers if there's

15    some technical deficiency or technical infirmity with the

16    order, i.e., some language you perceive that deviates from the

17    way I ruled.  But that is not an invitation to seek rehearing

18    or reargue any of the aspect of the ruling.  Your forum in

19    which to do that is, should you choose to pursue it, the Court

20    of Appeals.  But if there is some technical deficiency here,

21    I'm happy to hear that.  But I need a letter by 3 o'clock.

22               MR. AGOSTINO:  Yes.  No, I will do that.

23               Just as a logistical matter, I haven't read your ––

24    how many days do I have to get Mr. Mellon to come to the

25    country?  And obviously to the extent we need assistance ––

H28AMELHps

1          THE COURT:  The order does not discuss him coming to

2     the country.  It directs compliance with the U.S. petition.

3     OK.  I mean, Mr. Lillywhite, the order enforces the summons.  I

4     think it's beyond my pay grade to schedule the testimony.

5          MR. AGOSTINO:  Location here.  Obviously we're asking

6     him to travel to the United States.

7          THE COURT:  Mr. Lillywhite, while it's beyond the

8     scope of what I was asked to rule upon, I'm happy for you to

9     address it because it would be worthwhile for you to arrange

10    this among yourselves while we're here on the record.  Do you

11    want to address the question that Mr. Agostino just raised?

12         MR. LILLYWHITE:  Sure, your Honor.  So the summons

13    requires that Mr. Mellon appear at the IRS office in New York

14    City.  If Mr. Mellon is not presently in the country, the

15    government would certainly be happy to work --

16         MR. AGOSTINO:  Yes.

17         THE COURT:  Speak into the microphone.

18         MR. LILLYWHITE:  Sorry.  The government would

19    certainly be willing to work with Mr. Mellon's counsel and hear

20    about his schedule when he next plans to come to the country,

21    and if it's within a short-enough period of time, we're happy

22    to try to schedule the appearance in accordance with the

23    summons at that time.

24         THE COURT:  Well, look, Mr. Agostino, let me put it as

25    bluntly as I can.  He is ordered to comply with the summons.

H28AMELHps

1    If you, by negotiation with the government, modify the date,

2    for example, if the government is willing to move the date

3    later in order to accommodate travel plans of Mr. Mellon's, the

4    Court is not going to get in the way of that, but short of an

5    agreement with the government, the date of the summons applies.

6              OK.  We stand adjourned.  Thank you.

7              MR. AGOSTINO:  Thank you.

8                               o0o

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25